Loren RANSOM, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of
Health, Education & Welfare,
Defendant.

No. 69–C–232.

United States District Court,
E. D. Wisconsin.

June 30, 1972.

Margadette M. Demet, Milwaukee,
Wis., for plaintiff.

David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff applied for social security benefits under § 202(d) of the social security act [42 U.S.C. § 402(d)]. The hearing examiner recommended that the application be denied, and the agency's "appeals council" adopted his recommendation. The plaintiff then brought this action for judicial review under § 205(g) [42 U.S.C. § 405(g)]. Both parties have moved for summary judgment, each observing that no genuine issue of material fact remains.

Entitlement to benefits under the provisions of § 202(d) is established by a claimant's showing that he fulfills the applicable requirements of § 202(d)(1) (A) through (C) which provide, as relevant here:

"(d)(1) Every child . . . of an individual entitled to old-age . . . benefits . . . if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and . . . is under a disability (as defined in section 423(d) of this ti-

tle) which began before he attained the age of 18, and

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

.　　.　　.　　.　　.　　.

shall be entitled to a child's insurance benefit. . . ."

The hearing examiner's recommended decision indicates that he considered the plaintiff's claim only in terms of § 202(d)(1)(B). There is no specific finding that an application was filed by the plaintiff and that the plaintiff was dependent upon a living individual, entitled to benefits, at the time of filing that application. However, it is clear from the record that the plaintiff did file the application and that his father, Charles Ransom, is alive and is entitled to benefits. Furthermore, the plaintiff, as a natural child, meets the statutory test of dependency. § 202(d)(3), 42 U.S.C. § 402(d)(3); 20 C.F.R. §§ 404.-320(a)(5), 404.323(a)(1), 404.325(a)(3). Since the parties did not discuss these other requirements, it must be assumed that the government concedes their fulfillment.

■ The only issue of disagreement between the parties, therefore, is whether the plaintiff is under a disability, as defined in § 223(d) [42 U.S.C. § 423(d)], which began before he reached the age of eighteen. The Secretary's decision was that he is not. The Secretary's findings of fact, if supported by substantial evidence, are conclusive. § 205(g), 42 U.S.C. § 405(g). The plaintiff is not entitled to a trial *de novo* in federal court. Jones v. Celebrezze, 331 F.2d 226 (7th Cir. 1964); Carqueville v. Flemming, 263 F.2d 875 (7th Cir. 1959).

■ Despite this heavy burden, I must reverse the Secretary's determination. I can find no substantial evidence supporting the findings of the hearing examiner upon which that determination

is based; indeed, the evidence strongly supports a contrary view.

To satisfy the provisions of § 223(d), the plaintiff is required to prove: (a) that there is a medically determinable mental impairment of the type specified by statute; (b) that there is an inability to engage in any substantial gainful activity; and (c) that the inability results from the impairment. Marion v. Gardner, 359 F.2d 175 (8th Cir. 1966). The hearing examiner, in his "evaluation of the record" (t. 166), refers to the "unquestionably disabling condition" the plaintiff now suffers. It is conceded, therefore, that the plaintiff's present condition satisfies the test as to disability as described in *Marion*.

· The hearing examiner did not believe that the plaintiff was disabled before age eighteen, however. His conclusions are based almost entirely on the testimony of the government's psychiatric expert, who in turn based his opinion on the plaintiff's history and records. Considering that testimony and the history and records, there is ample support not only for the finding that the plaintiff is presently disabled but also for the proposition that he was disabled before age eighteen. Although the expert's testimony is guarded and somewhat equivocal in most instances, there are some relatively clear statements. He observed that the plaintiff definitely is presently disabled. He commented that the plaintiff had a similar personality disorder prior to age eighteen and that he could find nothing to indicate there had been any change.

"I believe his character structure has been a developmental thing throughout his childhood and was severely distorted well before eighteen. I believe that it began to be distorted as early—as early as age three, and there were probably evidences of something going on probably even prior to that. (t. 283).

"I don't think Loren would have gotten a job at sixteen at the local drug-

store and held it, no, I don't think he would." (t. 287).

The testimony, record and history all indicate that from a very early age, as a manifestation of his severe mental disorder, the plaintiff was unable to accept subordination and regimentation. As a result, although he was intellectually capable of understanding directions and physically capable of performing duties, he was not emotionally capable of remaining in subordinate positions or close relationships for more than minimal periods of time. Thus, the plaintiff may have been able to perform somewhat "gainful" functions, but they certainly could not have been deemed "substantial" in light of their extremely limited duration.

As support for his recommendation, the hearing examiner stated that the plaintiff could and did engage in substantial gainful activity before his eighteenth birthday (t. 167). In the context of this statute, it is important to understand the significance of the eighteenth birthday; the issue is not whether the plaintiff was able to work at any time while he was under eighteen, but rather whether that ability, if any, terminated before he turned eighteen—that is, whether his disability *began* before his eighteenth birthday. Furthermore, there is no evidence in the record to support the allegation that he was so engaged. The testimony indicates that his first employment for hire was after reaching age eighteen and that such employment, like all later employment, was short-lived. The appeals council recognized the hearing examiner's erroneous finding and stated in its decision that what he really meant was that the plaintiff had demonstrated *ability* to work by successful completion of eleven grades of school, by the performance of duties in the Industrial School and by activity on his uncle's farm (t. 125).

If the plaintiff did, in fact, "successfully" complete eleven grades, it must have been no more than a paper achievement. He was expelled from kindergarten (t. 164), later refused to attend school "many times" (t. 164), attended Millard Farm School and Norris Farm as an incorrigible and truant (t. 163), was expelled from public junior high school (t. 214) and, at age 13, was committed to the Wisconsin Industrial School where he remained until one of his many escape attempts was successful in July, 1940, when he was sixteen (t. 163).

Similarly, the "performance of duties" in industrial school is also questionable. The only evidence concerning this is the plaintiff's own testimony, and it shows that he was constantly in trouble, attempted escape several times, was punished regularly. and learned no skills (t. 215–220).

Finally, "activity on his uncle's farm" is alleged to be a basis for the statement that he had demonstrated an ability to engage in substantial gainful employment. Again, the testimony shows that he never remained on the farm more than a few months without leaving (t. 218–219).

These episodes do not support the contention that the plaintiff's disability began after reaching age eighteen. In fact, his reactions in these situations lend support to the opposite position. They are all examples of symptoms common to his impairment.

Therefore, it is ordered that judgment be entered reversing the decision of the Secretary.

It is further ordered that the plaintiff's motion for summary judgment be and hereby is granted, and that the defendant's motion for summary judgment be and hereby is denied.